IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

UNITED STATES OF AMERICA

       Plaintiff,

      v.                                                                                                          1:23-cr-00748-KWR

JOSE TRUJILLO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Jose Trujillo's Motion to Suppress Evidence (Doc. 80). This Court held an evidentiary hearing on October 19, 2023, and received the official transcript on November 21, 2023. Having reviewed the pleadings and heard oral argument and testimony at the hearing, the Court finds that Defendant Trujillo's motion is not well taken, and therefore, is **DENIED**.

### BACKGROUND[1]

In the days prior to the January 3, 2023, traffic stop, Defendant Solomon Pena, the registered owner of the Nissan Maxima, the vehicle in question, lent his car to Defendant Jose Trujillo. Subsequently, in the early morning hours of January 3, 2023, while on patrol, Bernalillo County Sheriff's Deputy Officer Jonathan Skroch initiated a traffic stop of the vehicle operated by Defendant Jose Trujillo. Deputy Skroch initiated the stop based on what he claims to have observed: an improperly displayed and possibly expired registration sticker on Defendant's vehicle. Doc. 108, 27:7-16.

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charges in this Memorandum Opinion and Order.

After Deputy Skroch initiated the stop, Defendant Trujillo immediately pulled the vehicle into a private party's driveway.  Deputy Skroch asked Defendant Trujillo why he did not have a current registration sticker, to which Defendant Trujillo stated he had borrowed the vehicle.  Doc. 80, Ex. C at 1:29.  Defendant Trujillo was unable to produce insurance documents, registration, and identification but provided his date of birth, name, and social security number.  Doc. 80, Ex. A at 6; Ex. 1, at 6:03-22.

Upon running Defendant Trujillo's information through the National Crime Information Center ("NCIC") database, Deputy Skroch told Defendant Trujillo there was possibly an active warrant for his arrest regarding a failure to appear for a criminal hearing.  Deputy Skroch explained to Defendant Trujillo that if he confirmed it was an active arrest warrant, he would arrest him.  In case the warrant was active, Deputy Skroch asked Defendant Trujillo if there was anything he wanted from the vehicle.  Ex. 1 at 10:56.  Defendant Trujillo replied that there was nothing he wanted to take with him and to "[j]ust tow it, man.  I don't have nobody I can…".  *Id*., at 11:04.  From this exchange, Deputy Skroch believed there was no one available to pick up the vehicle and that Defendant Trujillo wanted the car towed.  Doc. 108, 36:15-21.  Deputy Skroch confirmed the active warrant and again asked Defendant Trujillo if he wanted anything from the vehicle; Defendant declined.  Ex. 1 at 17:04-14.  Deputy Skroch informed Defendant Trujillo that he needed "to inventory [his] car to make sure there's nothing of value in there, though, we have to document that so if the tow company steals anything." *Id*., at 17:20.  Defendant Trujillo stated, "[n]o, it's fine.  I'd rather not." *Id*., at 17:28.  Deputy Skroch informed Defendant Trujillo that not inventorying the vehicle was not an option, and the vehicle would be inventoried.  *Id*., at 17:34.  In response to this, Defendant Trujillo asked, "you're gonna tow it?" to which Deputy Skroch replied, "[y]eah."  Defendant Trujillo replied, "[o]kay.  Yeah, yeah, go ahead and tow it.  Go ahead and tow it, man." *Id*., at 17:38-42.

Deputy Skroch did not contact the complex owner or owner of the car, Defendant Solomon Pena, before impounding the vehicle. Deputy Skroch arranged for the towing of the vehicle and in preparation of impoundment, conducted an inventory search despite believing there was nothing of interest in the car. *Id*., at 19:24-22:30. During the inventory search, Deputy Skroch found two bags of suspected fentanyl pills in the center console, two firearms in the trunk, cash, and hundreds of small baggies. Ex. A, at 6. Deputy Skroch arrested Defendant Trujillo, who replied, "I did not condone any search. I did not condone to anything…No I did not condone to that. I said, no, you cannot. I said you could tow it. I did not say you could do inventory on it." Ex. 1, at 22:40-44. Defendant Trujillo understands that one of the firearms was subsequently subject to ballistics tests, linking it to the shooting in Count Four. Doc. 80, at 5.

Defendant Trujillo faces several charges, including: (1) conspiracy, in violation of 18 USC § 371; (2-5) interference with federally protected activities, in violation of 18 USC § 245(b)(1)(A) and 2; (6-8) using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such a crime, discharging said firearm, in violation of 18 USC § 924(c)(1)(A)(iii) and 2; (9) using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime, discharging said firearm, in violation of 18 USC §§ 924(c)(1)(A)(iii) and (B)(ii); (10) possession with intent to distribute 40 grams and more of fentanyl, in violation of 21 USC §§ 841(a)(1) and (b)(1)(B); and (11) using and carrying a firearm during and in relation to a drug trafficking crime, and possessing a firearm in furtherance of such crime, in violation of 21 USC §§ 924(c)(1)(A)(i) and (B)(ii).

Defendant Trujillo now seeks the suppression of all evidence obtained from the traffic stop and subsequent search. Defendant Trujillo alleges that the impoundment and inventory search violated his Fourth Amendment rights. He contends that under *United States v. Sanders*, 796 F.3d 1241 (10th Cir.

2015), the vehicle posed no threat to public safety and was parked on private property when it was searched and impounded. Impoundment on private property by police is constitutional only when there is both a standardized policy and reasonable community caretaking justification. Here, neither were present and therefore, both the impoundment and inventory search were unlawful.

## DISCUSSION

I. **The Traffic Stop Was Lawful**

Defendant Trujillo does not challenge the lawfulness of the stop, but rather notes that evidence produced in discovery has shown the vehicle was properly registered at the time of the stop. The Court concludes the traffic stop was lawful. NMSA 1978, § 66-3-18 states:

(A)   The registration plate shall be attached to the rear of the vehicle for which it is issued…It shall be in a place and position so as to be clearly visible, and it shall be maintained free from foreign material and in a condition to be clearly legible.

(C)   No vehicle while being operate on the highways of this state shall have displayed either on the front or the rear of the vehicle any registration plate, including validating sticker, other than one issues or validated for the current registration period[.]

New Mexico law requires vehicle registration plates to be attached to the rear of the vehicle and clearly visible and legible. *Id*. Expired registration plates or validating stickers are not permitted to be displayed; violations constitute a misdemeanor. *Id*. An observation of a violation of this type naturally produces a reasonable, articulable suspicion that a traffic infraction is occurring, thus justifying a traffic stop.

Similar instances of traffic stops for expired or obstructed vehicle registration stickers have been previously upheld as valid under the Fourth Amendment. *United States v. DeGasso*, 369 F.3d 1139, 1141, 1143 (10th Cir. 2004); *United States v. Ledesma*, 447 F.3d 1307 (10th Cir. 2006); *State v.*

*Jacquez*, 2009–NMCA–124, ¶¶ 5, 9, 147 N.M. 313, 222 P.3d 685; *United States v. Trestyn*, 646 F.3d 732 (10th Cir. 2011); *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994); *United States v. Edgerton*, 438 F.3d 1043 (10th Cir. 2006).

Deputy Skroch initiated the stop based on his observations of a suspected traffic violation on the evening in question. Deputy Skroch noticed a vanity plate partially obstructing the registration sticker, which began with a "1." Doc. 108, 27:7-16. Not only was the registration sticker partially obstructed, but the "1" indicated the sticker expired prior to 2020, which would be in violation of NMSA 1978, § 66-3-18. *Id*. Whether or not the vehicle was properly registered at the time of the stop, as Defendant Trujillo argues, is itself a red herring. Defendant Trujillo has not contested the validity of the initial stop and therefore, this Court finds the traffic stop lawful.

> II. **Defendant Trujillo Has Standing to Contest the Vehicle Search and Impoundment**

Defendant Trujillo asserts that he borrowed the vehicle with Defendant Pena's consent. As the operator of the vehicle, he had a legitimate expectation of privacy in the car and its contents and therefore, has standing to challenge its search.

The Fourth Amendment protects people against unreasonable searches of "their persons, houses, papers, and effects." U.S. Const. amend. IV; *Soldal v. Cook County*, 113 S. Ct. 538, 544 (1992). In deciding whether a defendant has standing to seek the exclusion of evidence, two factors are relevant: first, whether defendant has manifested a subjective expectation of privacy in the area searched, and second, whether his expectation is one that society would recognize as objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *U.S. v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989).

To have standing to challenge the search of a vehicle, a defendant bears the burden to demonstrate that he or she had a "legitimate possessory interest in or [a] lawful control over the car." *United States v. Valdez Hocker*, 333 F.3d 1206 (10th Cir. 2003), citing *United States v. Allen*, 235 F.3d

482, 489 (10th Cir. 2000).  To address issues of standing, courts often look to factors such as, "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle."  *Allen*, 235 F.3d at 489.

In instances where the movant of a motion to suppress is not a registered owner of the vehicle, but rather just had possession, possession itself is insufficient to establish a possessory interest.  *United States v. Martinez*, 983 F.2d 968, 973 (10th Cir. 1992).  A movant bears the burden of showing, "that he gained possession from the owner or someone with authority to grant possession."  *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990).  If this is established, then the movant, "plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle."  *Valdez Hocker*, 333 F.3d at 1209 citing, *Rubio–Rivera*, 917 F.2d at 1275; *United States v. Orrego–Fernandez*, 78 F.3d 1497, 1502 (10th Cir. 1996); *United States v. Soto*, 988 F.2d 1548, 1553 (10th Cir. 1993).

Defendant Trujillo argues and the United States does not dispute that Defendant has standing to contest the traffic stop, impoundment, and vehicle search.  The parties agree that Defendant Pena lent the car to Defendant Trujillo, who was driving it on the morning in question.  While possession is insufficient to establish a possessory interest, Defendant Pena does not dispute that he had authority to grant possession as the registered owner of the vehicle and that Defendant Trujillo gained possession from him.  *See Arango*, 919 F.2d at 445.  As the movant, Defendant Trujillo has satisfied this burden and therefore, he had a reasonable expectation of privacy in the vehicle and standing to challenge the search.  *Valdez Hocker*, 333 F.3d at 1209, *Rubio-Rivera*, 917 F.2d at 1275, *Orrego-Fernandez*, 78 F.3d

at 1502, *Soto*, 988 F.2d at 1553. Therefore, this Court finds Defendant Trujillo has standing to contest the traffic stop, impoundment, and search.

### III. Defendant Trujillo Consented to the Vehicle Impoundment

The Government argues that Defendant Trujillo implicitly and explicitly consented to both the vehicle impoundment and inventory search. Because consent is a well-established exception to the warrant requirement, Defendant Trujillo's Fourth Amendment rights were not violated. Defendant Trujillo argues that under *United States v. Sanders*, consent is but one of several factors to be considered by courts when weighing the impoundment of a vehicle on private property. The Government's consent argument, that Defendant explicitly consented to the impoundment which implicitly authorized the inventory search, resembles something akin to abandonment or wholesale waiver of Fourth Amendment rights. Furthermore, even if Defendant Trujillo consented, his consent was not voluntary or specific. The Court finds Defendant Trujillo consented to the vehicle impoundment, which authorized the inventory search.

The Fourth Amendment protects against unreasonable searches and seizures conducted by law enforcement officers or other government agents. U.S. Const. Amend. IV; *Katz v. United States*, 389 U.S. 347, 351 (1967) (holding that the "Fourth Amendment protects people, not places"). Searches conducted without a warrant are per se unreasonable under the Fourth Amendment, "subject only to a few specifically established and well-delineated exceptions." *Id*., at 357. One such exception to the warrant requirement is "a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S.218, 219 (1973). A third party has the authority to consent if he or she has either "[1] mutual use of the property by virtue of joint access, or [2] control for most purposes over it." *United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir. 1999). For a search by consent to be valid, the Government has the burden of proving that consent was: (1) unequivocal, "freely and voluntarily given"; and (2) without

7

duress or coercion, express or implied. *Id.* at 222; *U.S. v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). Mere submission to lawful authority does not equate to valid consent. *United States v. Manuel*, 992 F.2d 272, 275 (10th Cir. 1993). The burden of proving that consent to search was given freely and voluntarily is always on the Government on a motion to suppress. *U.S. v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993).

Courts apply an objective reasonableness test to measure the scope of a person's consent, based on the totality of the circumstances surrounding the search. *United States v. Kimoana*, 383 F.3d 1215, 1223 (10th Cir. 2004). The Court may exclude unlawfully seized evidence in criminal prosecutions where a defendant's Fourth Amendment rights have been violated. *United States v. Herrera*, 444 F.3d 1238, 1248 (10th Cir. 2006) (citing *Illinois v. Krull*, 480 U.S. 340, 347 (1987)).

Given Defendant Pena's authority to grant and granting access of the vehicle to Defendant Trujillo for his mutual use and control for several days, this Court finds Defendant Trujillo had the authority to consent to the tow. *See Rith*, 164 F.3d at 1329.

Defendant Trujillo explicitly requested the towing of the vehicle at multiple points during the stop, which authorized and resulted in a lawful impoundment and inventory search. While awaiting confirmation of the arrest warrant, Deputy Skroch asked Defendant Trujillo what he would like done with the vehicle in the event the warrant confirmed. Ex. 1 at 10:56. Defendant Trujillo stated, "Just tow it, man." Ex. 1 at 11:04; Doc. 108, 36:5-10; 68:8-12. Upon confirmation of the arrest warrant, Deputy Skroch informed Defendant Trujillo an inventory was required to ensure there was nothing of value in the vehicle. Ex. 1 at 17:20. While Defendant Trujillo initially declined the inventory search, Deputy Skroch explained this was not an option; the vehicle would be towed and inventoried. To which, Defendant again replied, "[y]eah, yeah, go ahead and tow it. Go ahead and tow it, man." Ex. 1 at 17:42; Doc. 108, 74:22:23. This explicit consent implicitly authorized the inventory search, the latter being an

exception to the search warrant requirement that does not require consent. *United States v. Braxton*, 61 F.4th 830, 833 (10th Cir. 2023). Once Defendant Trujillo consented to the impoundment and the vehicle was in lawful police custody, police did not need separate consent to conduct an inventory search. Nor could Defendant's post hoc assertion regarding the scope of his consent bifurcate consent as to impoundment versus inventory. While Defendant Trujillo relies on *United States v. Roth*, there, unlike this case, the vehicle was not in lawful police custody when police searched the vehicle. 944 F. Supp. 858, 963, 862 (D. Wyo. 1966).

Inventory searches are justified through the need to protect an owner's property in the vehicle, protect police against lost or stolen property, and protect police from danger. *S. Dakota v. Opperman*, 428 U.S. 364, 369, 373 (1976); *United States v. Kendall*, 14 F.4th 1116, 1124 (10th Cir. 2021). While Defendant Trujillo contends that if implicit authorization of the inventory search is found, this waives all Fourth Amendment rights in the vehicle, this is contrary to an extensive line of precedent. It is well established that inventory searches of impounded vehicles, if reasonable and done according to standard police procedures and to protect the car and its contents, are an exception to the Fourth Amendment. *United States v. Chavez*, 985 F.3d 1234, 1242 (10th Cir. 2021), *Braxton*, 61 F.4th at 834, *Opperman*, 428 U.S. at 373, *Kendall*, 14 F.4th at 1124, *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 741 93 L. Ed. 2d 739 (1987); *United States v. Lugo*, 978 F.2d 631, 636 (10th Cir. 1992). Such searches are permissible under the community-caretaking function if there are public safety concerns. *Cady v. Dombrowski*, 413 U.S. 433, 447–48, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

Here, Deputy Skroch was required to inventory the car according to standard operating procedures for several reasons: to protect any valuables in the vehicle prior to the tow, especially given the high-crime nature of the neighborhood, as well as protect the police department and tow company from liability. Ex. 1 at 17:20; Doc. 108, 49:22-25; 37:9-13. As discussed in Section IV, Deputy Skroch

9

conducted the impoundment and inventory search with a valid purpose and pursuant to several Bernalillo County Sheriff's Office ("BCSO") standard procedures: Sections 311-1(A), 311-1(D), 311-2(C-D). *See* Ex. 2. Defendant Trujillo had an outstanding arrest warrant and was arrested without the registered owner present. Given the circumstances and Defendant Trujillo's own statements as to the unavailability of anyone, including the registered owner, to pick up the vehicle, a tow and inventory search were required according to BCSO policy. Ex. 2; Ex. 1 at 11:04. Had Defendant Trujillo even withheld his consent, impoundment and an inventory search would have been required under BCSO policy regardless. Doc. 108, 76:13-25; 77:1. Deputy Skroch's conduct during the inventory, i.e., his failure to wear gloves and his reactions to discovering the evidence in question, reinforces that BCSO conducted the inventory for the stated reasons and did not even expect to find evidence. Doc. 108, 43:3-5; Ex. 1, 19:26-22:12.

While Defendant Trujillo argues that if consent exists, it was not voluntary, this contention is not persuasive. The record supports a finding that Defendant's consent to impoundment was both freely and voluntarily given and without express or implied duress or coercion. *Schenckloth,* 412 U.S. at 222; *Guerrero*, 472 F.3d at 789. Given Defendant's requests to tow the vehicle both before and after his arrest, the Court finds it was objectively reasonable for the scope of this consent to include impoundment based on the totality of the circumstances. Ex. 1 at 11:04, 17:42; Doc. 108, 36:5-10; 68:8-12; 74:22:23. Therefore, the Court finds Defendant's consent valid.

In sum, this Court finds that Defendant Trujillo validly consented to the vehicle impoundment, which implicitly authorized the subsequent inventory search. The inventory search was reasonable and conducted according to standard police procedures to protect the car and its contents. As such, both the impoundment and inventory search of the vehicle were lawful.

### IV. Alternatively, the Impoundment and Inventory Search Were Lawful Under *United States v. Sanders*

Defendant Trujillo contends that the inventory search and impoundment of the vehicle were unconstitutional under *United States v. Sanders*, which governs the seizure of vehicles from private property by police. The United States contends that Defendant Trujillo consented to the vehicle's impoundment and search and therefore, *Sanders* does not require a different outcome since consent is an exception to the Fourth Amendment. However, under *Sanders*, the Government argues the impoundment was reasonable and the result of a standardized policy and non-pretextual community caretaking function. Therefore, both the impoundment and inventory search were lawful under *Sanders*. This Court agrees with the United States that *Sanders* does not require a different outcome since Defendant Trujillo consented to the impoundment. However, in the alternative, this Court finds that in weighing the *Sanders* factors, the impoundment and inventory search were lawful.

The Fourth Amendment protects individuals against unreasonable seizures of property. Generally, "seizures of personal property are unreasonable…unless [the seizure is] accomplished pursuant to a judicial warrant issued by a neutral magistrate after finding probable cause." *See Illinois v. McArthur*, 531 U.S. 326, 330 (2001). Nonetheless, one exception to the warrant requirement is the "community caretaking function." *See Opperman*, 428 U.S. at 368. Under this exception, police officers have the authority to "remove from the streets vehicles impeding traffic or threatening public safety." *Id*. Police officers may exercise their discretion to remove a vehicle by towing or impounding it, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *See United States v. Sanders*, 796 F.3d 1241, 1244–45 (10th Cir. 2015) (quoting *Bertine*, 479 U.S. at 375).

The Fourth Amendment "imposes heightened requirements on police who seize vehicles from private property." *See United States v. Woodard*, 5 F.4th 1148, 1152 (10th Cir. 2021) (quoting *Sanders*, 796 F.3d at 1249). These requirements allow impoundments from private property "only when (1) the car is blocking traffic, (2) the car is posing an imminent threat to public safety, or (3) the impoundment is justified by a standardized policy and a reasonable, non-pretextual rationale of community caretaking." *Id*.; *see also United States v. Trujillo*, 993 F.3d 859, 867 (10th Cir. 2021) (explaining that the Tenth Circuit has "upheld impoundment of vehicles parked in private lots and other locations where unoccupied vehicles may still constitute nuisances, although their impact on traffic is questionable").

Under the community caretaking exception, an "impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only [1] if justified by both a standardized policy and [2] a reasonable, non-pretextual community-caretaking rationale." *Sanders*, 796 F.3d at 1248; *Trujillo*, 993 F.3d at 871 (noting that *Sanders* addresses impoundments "carried out pursuant to standardized criteria but not justified by [] public safety and traffic control goals"). "The standardized criteria prong ensures that police discretion to impound vehicles is cabined rather than uncontrolled, and the existence of such standardized criteria is the touchstone of the inquiry into whether an impoundment is lawful." *See United States v. Venezia*, 995 F.3d 1170, 1176 (10th Cir. 2021) (internal quotations omitted); *Sanders*, 796 F.3d at 1250.

Under the second prong, a court may consider the following non-exclusive factors from *Sanders* to determine whether an impoundment is justified by a reasonable and legitimate, non-pretextual community-caretaking rationale: (1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is

12

implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment. *Sanders*, 796 F.3d at 1250; *see also Venezia*, 995 F.3d at 1177.

The Government "bears the burden of proving that its impoundment of a vehicle satisfies the Fourth Amendment." *Sanders*, 796 F.3d at 1244. More specifically, the Government must point to "specific and articulable facts which reasonably warrant an intrusion into the individual's liberty and must show that the government's interest outweighs the individual's interest in being free from arbitrary governmental interference." *United States v. Neugin*, 958 F.3d 924, 931 (10th Cir. 2020) (internal quotations and alterations omitted). "Although officers are entitled to some latitude in undertaking their community caretaking role, their actions must be reasonably related in scope to the underlying justification." *Id*. (internal quotations omitted) (concluding that the community caretaking exception did not apply when an officer opened and examined a defendant's truck camper where the Government failed to show that "state law or sound police procedure" warranted opening the camper nor how opening the camper was "justified by concern for the safety of the general public"). Additionally, "[t]hough impoundments and inventory searches often occur sequentially, they are subject to different legal standards." *Sanders*, 796 F.3d at 1244 n.1. "An inventory search is a routine administrative procedure designed to effect three distinct purposes: protection of the owner's property which may be stored in the vehicle; protection of the police against claims of lost, stolen or vandalized property; and protection of the police from potential danger." *Lugo*, 978 F.2d at 636–37.

"When the police acquire temporary custody of a vehicle, a warrantless inventory search of the vehicle does not offend Fourth Amendment principles so long as the search is made pursuant to standard police procedures and for the purpose of protecting the car and its contents." *Id*. (emphasis added) (internal quotations omitted); *see also Chavez*, 985 F.3d at 1242. Therefore, "standardized criteria must

regulate inventory searches to ensure that they are not used as a ruse for a general rummaging in order to discover incriminating evidence." *Lugo*, 978 F.2d at 636–37 (internal quotations omitted).

In weighing the *Sanders* factors, this Court finds the impoundment and inventory search were reasonable and the result of a standardized policy and non-pretextual community function. This Court finds that BCSO towed the vehicle pursuant to standardized policies, namely, provisions 311-1(A), 311-1(D), and/or 311-2(D). Ex. 2. Section 311-1(A) states that vehicles will be towed in instances where a driver has outstanding arrest warrants. *Id*. Section 311-1(D) further states that a vehicle will be towed when a driver is arrested or cannot be released to the registered owner. *Id*. Section 311-2(D) explains that "[u]pon arrest of the driver of the vehicle, the arresting Deputy may release the vehicle to the verified registered owner of the vehicle if they are present at the time of arrest, otherwise, the vehicle will be towed pursuant to this policy." *Id*.

Here, Defendant Trujillo, the driver, had an outstanding arrest warrant and was arrested without the registered owner present. Given the circumstances and Defendant Trujillo's own statements as to the unavailability of anyone, including the registered owner, to pick up the vehicle, a tow was required according to BCSO policy. Ex. 2; Ex. 1 at 11:04. Deputy Skroch further testified as to his belief that provisions 311-1(A) and 311-1(D) are both applicable to this case. Doc. 108, 45:12-19.

While Defendant Trujillo contends that 311-2(J) governs this impoundment, this argument is not well taken. 311-2(J) states, "[v]ehicles will not be towed from private property unless needed as evidence, or pursuant to a lawful court order." Ex. 2. However, this provision is inapplicable here. 311-2(J) is applicable most often in civil matters, when an individual on private property wants a third party's vehicle towed. Doc. 108, 46:4-7, 19-25; 129:1-17. Here, the vehicle was located on private property as a result of actions taken by law enforcement. Defendant's vehicle was not already parked on private property absent law enforcement action nor was the vehicle parked on Defendant's own

property.  Defendant Trujillo has not asserted or explained why 311-1(A), 311-1(D), or 311-2(D) should not control here but rather 311-2(J).  Defendant Trujillo argues that *United States v. Chavez* applies, and the impoundment should be held unlawful.  However, several key differences distinguish this case from *Chavez*, namely, consent was not at issue in *Chavez,* and the impoundment there concerned the defendant's vehicle parked on his own private property.  *Chavez*, 985 F.3d at 1236-38, 1242.  If, as Defendant contends, 311-2(J) were applicable to this case, what would prevent any individual from pulling a vehicle onto any private property to evade possible impoundment and an inventory search by police?

In sum, the Government has pointed to three separate policy provisions requiring impoundment as applied to this case since Defendant Trujillo had an outstanding warrant, was arrested, and the owner of the vehicle was not present.  Defendant Trujillo has directed this Court to 311-2(J), which while prohibiting towing on private property, is only reinforced by case law that has salient differences from this case.  As such, this Court finds that this vehicle was impounded pursuant to standardized policies.

Secondly, Deputy Skroch had a reasonable, non-pretextual community caretaking rationale for towing the vehicle via the *Sanders* factors.  The impoundment here was justified because the vehicle was both a nuisance and at risk of theft or vandalism.

As to the first factor, the vehicle was located on private property, and ordinarily, "[p]ublic safety and convenience are less likely to be at risk when the vehicle is located on private property as opposed to public property." *Venezia*, 995 F.3d at 1178.  However, *Sanders* advised that posing a risk to public safety or impeding traffic can justify impoundment when parked on private property.  *Sanders*, 796 F.3d at 1250.  Given the risk of safety and vandalism, in addition to the impeding of a third-party driveway, it would have been unreasonable for police to have left the vehicle in the driveway overnight.  Like *United States v. Johnson* 734 F.2d 503 (10th Cir. 1984) and *United States v. Kornegay*, 885 F.2d 713 (10th Cir.

15

1989), here, the vehicle was located on private property and given the possibility of theft or vandalism and the inability to move the vehicle, impoundment was proper.  Sergeant Michael Flavin, who also took part in the traffic stop, noted that the neighborhood in question was a higher crime area with greater incidents of vandalism, theft, and violent crime, as did Deputy Skroch.  Doc. 108, 103:3-14; 49-50:22-25, 1-5.  Since Defendant Trujillo parked the vehicle on private property as a result of law enforcement action and given the circumstances surrounding the stop, this factor weighs in favor of impoundment.

As to the second *Sanders* factor, whether the property owner has been consulted, BCSO did not obtain the consent of the private property owner – the owner of the apartment complex.  However, as the Court outlined in *Venezia*, the second prong of the *Sanders* test, "goes to the private property owner's enjoyment of his or her private property," i.e., whether the vehicle's presence caused a nuisance.  *Venezia*, 995 F.3d at 1179.  For example, the community-caretaking interest may permit officers to impound a vehicle that interferes with a private property owner's use or enjoyment of their property." *Id*.  It would have been unreasonable and possibly unsafe for officers to have sought the complex owner's permission to tow a vehicle he or she was unaware of at 1:30 AM.  Doc. 108, 52:8-18; 83:6-10; 104:1-4.  Leaving the vehicle in the third-party's driveway until at least the next day likely would have interfered with the complex owner's use and enjoyment of his or her property.  At worst, leaving the vehicle overnight could have resulted in theft or vandalism given criminal patterns within the neighborhood.  As such, this second factor weighs in favor of impoundment.

Regarding the third factor, the Court finds there was not an alternative to impoundment.  Officer Skroch noted that several factors point to why there was no choice but to impound the vehicle.  Not only was the vehicle parked unattended in a high crime area in a private driveway, but Defendant Trujillo was not the registered owner of the vehicle, who was not present.  Doc. 108, 80:16-25.  BCSO cannot leave a vehicle parked on private property due to law enforcement contact.  *Id*.  Given the time and location of

the vehicle, BCSO expressed concerns as to the safety of the vehicle overnight and the possibility of vandalism.  In such instances, previous impoundments have been upheld*.  United States v. Haro Salcedo*, 107 F.3d 769, 771 (10th Cir.1997); *see also United States v. Johnson*, 734 F.2d 503, 505 (10th Cir.1984).  Defendant Trujillo stated no one was available to pick up the vehicle and requested a tow at several points during the encounter.  Ex. 1, 11:04, 17:42.  To have left the vehicle parked overnight in a private driveway, in a high crime neighborhood, despite the driver requesting a tow more than once, would have been unreasonable.  Therefore, the Court finds there was no alternative to impoundment.

As to the fourth factor, the Court finds the vehicle was implicated in a crime.  Deputy Skroch initiated the traffic stop based on a vanity cover that partially obstructed a registration sticker that he believed expired prior to 2020.  Doc. 108, 27:7-16.  While Defendant Trujillo contends he was never charged with a traffic violation, there is no such requirement under this prong of the *Sanders* test.  New Mexico law requires vehicle registration plates to be attached to the rear of the vehicle and clearly visible and legible.  NMSA 1978, § 66-3-18.  Expired registration plates or validating stickers are not permitted to be displayed; violations constitute a misdemeanor.  *Id.*  An observation of a violation of this type naturally produces a reasonable, articulable suspicion that a traffic infraction is occurring.  Whether or not the vehicle was properly registered at the time of the stop, as Defendant Trujillo argues, is irrelevant.  This Court finds the vehicle was implicated in a crime and therefore, this factor weighs in favor of impoundment.

Lastly, as outlined in Section III, this Court has found that the vehicle's driver, Defendant Trujillo, consented to the impoundment by asking for the tow.  Under *Sanders*, analysis and application of this factor most often occurs in instances where a driver is objecting to the impoundment of a vehicle.  *Sanders*, 796 F.3d at 1244.  Here, there is no such objection to the impoundment by Defendant Trujillo but rather consent.  Therefore, this Court finds the fifth factor weighs in favor of impoundment.

In sum, while this Court has found that Defendant Trujillo consented to the impoundment and therefore, the subsequent inventory search, in the alternative, under *United States v. Sanders*, the impoundment and inventory search were lawful. Several standardized BCSO policies justified the impoundment and there was a reasonable, non-pretextual community-caretaking rationale for impoundment when weighing the *Sanders* factors. The Government has met its burden that this impoundment satisfies the Fourth Amendment with specific and articulable facts. This Court finds the impoundment and inventory search lawful. Therefore, the evidence discovered should not be suppressed.

## V.     Alternatively, the Good Faith Exception Applies

The Government contends that even if the impoundment and inventory search were improper, suppression is not warranted because BCSO deputies acted in good faith. Defendant Trujillo argues that the good faith exception to the exclusionary rule is inapplicable since it applies only to warrants, binding judicial precedent later declared unconstitutional, and statutes later declared unconstitutional. If the Court finds Deputy Skroch acted in a reasonable manner in believing that Defendant Trujillo consented, this should be considered as acting in good faith under the *Sanders* framework, not as a separate good faith exception. This Court finds the good faith exception would apply if a Fourth Amendment violation occurred.

Under the good faith exception, "even if a warrant is not supported by probable cause, evidence seized in good-faith reliance on that warrant is not subject to suppression." *United States v. Xiang*, 12 F.4th 1176, 1182 (10th Cir. 2021) citing, *United States v. Knox*, 883 F.3d 1262, 1270 (10th Cir. 2018) citing, *United States v. Leon*, 468 U.S. 897, 922 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). The exclusionary rule does not apply to "warrantless administrative searches performed in good-faith reliance on a statute later declared unconstitutional." *Herring*, 555 U.S., at 142. "[T]he exclusionary

rule is not an individual right and applies only where it "'result[s] in appreciable deterrence.'" *Herring*, 555 U.S. at 141 citing, *Leon*, 104 S.Ct. at 3405. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id*., at 144. Ultimately, "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id*. citing, *Krull*, 480 U.S., at 348-49.

BCSO deputies' reliance on Defendant Trujillo's statements and department policies was objectively reasonable and therefore, the good faith exception would apply. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). The record does not support a finding that there was conduct on the part of Deputy Skroch or BCSO in need of deterrence. Nor does the record support a finding that Deputy Skroch or BCSO acted deliberately with reckless or grossly negligent conduct.

Defendant Trujillo affirmatively requested and consented to a tow at several points during the encounter. Ex. 1 at 11:04, 17:42; Doc. 108, 36:5-10; 68:8-12; 74:22:23. The Court finds it was objectively reasonable for Deputy Skroch to interpret Defendant's statements as consenting to the impoundment and subsequent inventory search. Even if mistaken, the Fourth Amendment is not violated when reasonable factual mistakes are made regarding consent. *Rodriguez,* 497 U.S. at 186. In this case, such factual mistakes would have been reasonable.

As outlined in Section IV, several BCSO policies required the towing and impoundment of a vehicle in instances of a driver's arrest. Deputy Skroch's reliance on these policies in conducting the inventory search, a type of warrantless administrative search, was objectively reasonable given the circumstances. Doc. 108, 101-102:25, 1-9. A reasonably, well-trained officer in both his knowledge

19

and experience in light of all of the circumstances, would have believed the impoundment and inventory search to be both required and legal. *Herring*, 555 U.S. at 145 citing, *Ornelas v. United States*, 517 U.S. 690, 699–700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

The record does not support a finding that Deputy Skroch was dishonest or reckless in his actions. Therefore, the Court finds the good faith exception applicable had the impoundment and inventory search been unlawful.

## CONCLUSION

The Court finds the traffic stop, impoundment, and inventory search were lawful. Defendant Trujillo validly consented to the impoundment, which authorized the inventory search. Alternatively, under *United States v. Sanders*, Deputy Skroch and BCSO were justified in impounding the vehicle and conducting an inventory search through both a standardized policy and a reasonable, non-pretextual community-caretaking rationale. Therefore, the impoundment and inventory search were lawful, and all evidence found was validly discovered.

**IT IS THEREFORE ORDERED** that Defendant Trujillo's Motion to Suppress (Doc. 80) is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE